IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


CHARLES R. WALTON    :  CIVIL ACTION
           :
    v.       :
           :
NAI SATURN EASTERN, LLC,  :
A Delaware Limited Liability   :
Company d/b/a Safeway    :  NO.   21-0545 (LFR)


<u>**MEMORANDUM OPINION**</u>


L. FELIPE RESTREPO             MARCH 8, 2022
UNITED STATES CIRCUIT JUDGE


   Plaintiff, Charles R. Walton, brought this action against Defendant, NAI Saturn

Eastern, LLC ("Safeway"), alleging that Safeway terminated Walton's employment

because of his age in violation of the Age Discrimination in Employment Act ("ADEA"),

29 U.S.C. § 621, and Delaware's Discrimination in Employment Act ("DDEA"), 19 Del.

C. § 710 *et seq.*   Before the Court is Defendant's Motion for Summary Judgment.   For

the reasons that follow, Defendant's motion is granted.


## I.  BACKGROUND[1]

   In 1988, Walton was hired by the grocery store chain Genuardi's Family Markets

L.P. ("Genuardi's").   JA 18.   Twelve years later, in 2000, Safeway acquired Genuardi's,

---

[1] The parties have stipulated to the following background facts.   *See* Stip. of Facts
(attached to Def.'s Br.).

and Walton became a Safeway employee.   JA 19.   From 2000 until his employment termination in February 2020, Walton served as a Grocery Manager at Safeway.   JA 19.

From at least October 2011 until Walton's termination, Safeway has had a Shoplifting Awareness and Prevention Policy ("Shoplifting Policy" or "Policy") in place for its associates.   JA 100.   The Policy states that its purpose is "to deter shoplifting and ensure the safety of [Safeway's] employees," and "that safety is [Safeway's] top priority."   JA 100.

The Policy further states that "[e]mployees must NOT confront or attempt to apprehend a suspected shoplifter and must immediately inform the manager or Asset Protection."   JA 100 (emph. in orig.).   In addition, the Policy states that "[s]trict compliance with the Policy is required," and any "failure to comply with any or all of this [P]olicy may result in discipline up to and including termination."   JA 100.   Rather than confront a shoplifter, Safeway instructed those employees who suspected a customer of shoplifting to greet them and ask if they need assistance.   JA 100.

In 2018, Soren Pryor, a former Safeway employee who was below the age of 40, confronted a group of shoplifters and had six of his front teeth knocked out by one of the suspects.   JA 215, 216, 219 ("After I was punched in the face, I was told to only follow [shoplifters] and try to get a picture of them and their tag number.").   Safeway did not discipline Pryor at the time he confronted the shoplifter but later terminated him for violating another company policy.   JA 216, 224.

On February 5, 2020, Walton observed what he thought to be a shoplifter loading a handbasket "with multiple kinds of the most expensive [brands of] baby formula."   JA 44.   Walton "confronted" the shoplifter and asked the shoplifter if he could help.   JA 102.   At that point, the shoplifter became "belligerent," so Walton walked the shoplifter to the registers at the front of the store.   JA 45, 102.   While at the registers, the shoplifter cursed at Walton, told Walton that he could not do anything to stop him, and ran for the exit of the store, knocking into Walton in the process.   JA 45, 102.

While the shoplifter attempted to flee, Walton "grabbed the handbasket from him [and] backed away."   JA 45, 102.   The shoplifter then punched Walton in the head and ribs.   JA 45, 102, 129.   Walton suffered a bloody nose, bruising, and broken glasses as a result of the attack, but did not seek medical attention.   JA 47, 129.

On February 7, 2020, Walton provided a written statement of the incident to Alan Tlusty, an investigator with Safeway's Asset Protection Department.   JA 102.   Walton's written statement indicates that Tlusty asked if he remembered taking the shoplifter-deterrence training, which explains the Shoplifting Policy.   JA 104.   In the statement, Walton wrote that he was "sure" he did but did not "remember it specifically."   JA 104.   Walton later confirmed that his statements in the incident report from February 7 were true when he made them.   JA 51.

After providing the incident report to Tlusty, Walton received a document titled "Confirmation of Performance Interview," which stated that Walton was "being placed

on suspension pending HR and Security review [of the incident] for possible violation of company policy."   JA 187.   The Confirmation of Performance Interview also stated that "[u]pon completion of this investigation, further disciplinary action may result, up to and including termination of employment."   JA 187.

On February 11, 2020, Safeway's Labor Manager Sherry Tumulty sent Walton a letter informing him that Safeway had completed its investigation, and "[b]ased on the result of th[at] investigation, . . . [his] employment with Safeway ha[d] been terminated." JA 188.   Following his termination, Walton filed a Charge of Discrimination with the Department of Labor.   JA 189.   The Department of Labor found there was insufficient evidence to support a conclusion that illegal discrimination occurred and issued a "No-Cause Determination and Dismissal."   JA 194.   Walton filed this action on April 15, 2021 asserting one Count titled "ADEA," claiming that Safeway terminated Walton "on the basis of his age in violation of the ADEA, 29 U.S.C. § 621 *et seq.* and 19 Del. C. § 710."   JA 6.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Although a court should "view the facts and draw all reasonable inferences in the non-movant's favor," the court will conclude that "[a] disputed issue is

'genuine' only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Resch v. Krapf's Coaches, Inc.*, 785 F.3d 869, 871 n.3 (3d Cir. 2015) (citation and quotation marks omitted).

## III.    DISCUSSION

As the parties acknowledge, *see* Def.s' Br. 4; Pl.'s Br. 6-7, Walton's claim of age discrimination is analyzed under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009) (applying *McDonnell Douglas* test to ADEA claim); *Giles v. Family Ct. of Del.*, 411 A.2d 599, 601-02 (Del. 1980) (*McDonnell Douglas* test applies to DDEA claim); *see also In re Dupont Country Club v. Del. Dep't of Labor*, 1986 WL 2257, *1 (Del. Super. Jan. 30, 1986) (DDEA is "modeled on" the ADEA, and the *McDonnell Douglas* test therefore also applies to an age discrimination case under the DDEA).   To survive summary judgment, Walton must first present a claim which can satisfy the elements of a prima facie case.   *See Smith*, 589 F.3d at 689.   If Walton can make out a prima facie case, the burden of production shifts to Safeway to provide a legitimate, non-discriminatory reason for its termination of Walton's employment.   *See id.* at 690.   If Safeway provides such a reason, the burden of production returns to Walton, and he may only prevail if he demonstrates with sufficient evidence that Safeway's proffered rationale is merely a pretext for termination based on age discrimination.   *Id.*

At all times the burden of persuasion rests with Walton.   *Id.*   In order to show

that Safeway's proffered rationale for terminating Walton was a pretext, he must

demonstrate that there is sufficient evidence that could cause a jury "either [to] (1)

disbelieve the employer's articulated legitimate reasons[,] or (2) believe that an invidious

discriminatory reason was more likely than not a motivating or determinative cause of the

employer's action."   *Id.* (quoting *Walton v. Mental Health Ass'n of Southeastern Pa.*,

168 F.3d 661, 668 (3d Cir. 1999)).


### A.    Prima Facie Case

To make out a prima facie case, Walton must show: (1) he was over the age of 40;

(2) he was subject to an adverse employment action; (3) he was qualified for his position;

and (4) the adverse employment action was because of his age.   *See id.* at 689.   Safeway

does not dispute that Walton can satisfy the first three elements.   Def.'s Br. 5.

However, Safeway contends that Walton is unable to satisfy the fourth element of his

prima facie case.

To establish the fourth element, Walton must show that (1) he was replaced by a

person sufficiently younger or (2) there was "more favorable treatment of similarly

situated colleagues outside of the relevant class."   *Pivirotto v. Innovative Sys., Inc.*, 191

F.3d 344, 356–57 (3d Cir. 1999).   "In determining whether similarly situated

nonmembers of a protected class were treated more favorably than a member of the

6

protected class, the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 647 (3d Cir. 1998).   Here, Safeway states that Walton was fired because he violated its Shoplifting Policy after it had announced in early 2019 that, for the protection of its employees, Safeway was going to enforce its policy of not permitting employees to confront shoplifters.   *See, e.g.,* Def.s' Br. 6-7.

Walton argues that Safeway treated, Soren Pryor, a 27-year-old employee, more favorably by not firing him for violating the Shoplifting Policy.   However, Walton is attempting to satisfy the fourth element by comparing himself to an employee who confronted a shoplifter prior to 2019 -- before Safeway announced the change in enforcement of its policy of not permitting employees to confront shoplifters.   Therefore, Walton is unable to show that Pryer was a similarly-situated colleague when he violated the Policy.   The undisputed testimony of Safeway Labor Manager Sherry Tumulty indicates that on a conference call in early 2019 with "the entire management team and store directors," the then-President of Safeway's Eastern Division emphasized that "no one should stop a shoplifter."   JA 201.   Pryor's testimony corroborates this change in enforcement of the Policy.[2]   JA 219.

---

[2] Indeed, Pryor testified that he and Walton were both involved in an incident before the change in enforcement of the Policy when they "apprehended" a shoplifter, and neither were disciplined.   JA 217.   The 2019 change in enforcement is further corroborated by proof that in May 2020, Safeway terminated two employees at the same store for confronting a shoplifter, one below the age of 40 and another over.   JA 200, 201, 218.

Safeway identifies Walton's violation of the Shoplifting Policy after the change in its enforcement as the reason for his employment termination.   While Pryor violated the Policy *before* the 2019 change in its enforcement as to all employees, Walton violated it *after* the change, and that was the reason given for his termination.   Therefore, the record shows that Pryor and Walton were not similarly situated.   Walton is unable to show there was "more favorable treatment of similarly situated colleagues outside of the relevant class," *see Pivirotto*, 191 F.3d at 356–57, and he cannot make a prima facie case.


### B.   Pretext

Even assuming *arguendo* that Walton could make a prima facie case, he is unable to show that Safeway's legitimate, non-discriminatory reason for terminating him was a pretext for age discrimination.   Safeway provides that it terminated Walton for violating the Shoplifting Policy as enforced as of early 2019.   Walton argues that this reason is a mere pretext for his termination based on his age.   At this stage of the *McDonnell Douglas* analysis, Walton has the burden of production.

To demonstrate that Safeway's legitimate, nondiscriminatory reason was pretextual, Walton must submit evidence sufficient to "allow[] the factfinder to infer that discrimination was more likely than not a motivating factor or determinative cause of the adverse employment action."   *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994).   At the pretext stage, "the factual inquiry into the alleged discriminatory motives of the

employer [rises] to a new level of specificity."   *Simpson*, 142 F.3d at 646.   The Third Circuit has recognized that a plaintiff's subjective perception is not relevant at summary judgment since the determinative factor is whether the decision-maker acted with discriminatory animus.   *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 800 (3d Cir. 2003).

Here, Walton provides only his own self-serving deposition testimony, including hearsay, in attempting to show that age discrimination was a motive for his termination. He does not provide documents or corroborating testimony, for example, that any Safeway employee, let alone any employee not in the protected class, faced any consequence other than termination for violating the Policy in or after 2019.   Nor does he provide any corroborating testimony or proof for his allegation that Safeway was using violations of the Shoplifting Policy as a pretext for terminating older managers.

Without more, Walton's self-serving testimony does not raise a triable issue of fact regarding pretext and is insufficient to meet his burden of production at this stage. *See Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) ("As a general proposition, conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.") (quotation marks and citation omitted); *see also Johnson v. Wash. Metro. Area Transit Auth.*, 883 F.2d 125, 128 (D.C. Cir. 1989) ("The removal of a factual question from the jury is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence[.]").   Accordingly, Safeway is entitled to summary judgment on

Walton's age discrimination claim.